IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Senior District Judge Richard P. Matsch

Civil Case No.1:15-cv-02499-RPM

COLONY INSURANCE COMPANY,

    Plaintiff,

v.

EXPERT GROUP INTERNATIONAL INC., dba EXPERT AU PAIR;
AU PAIR INTERNATIONAL, INC.;
GO AU PAIR OPERATIONS LLC dba AMERICAN CULTURAL EXCHANGE;
and
JOHANA PAOLA BELTRAN;
LUSAPHO HLATSHANENI;
BEAUDETTE DEETLEFS;
DAYANNA PAOLA CARDENAS CAICEDO;
ALEXANDRA IVETTE GONZALEZ, and those similarly situated,

    Defendants.

---

ORDERS ON PLAINTIFF'S MOTION FOR FINAL SUMMARY JUDGMENT

---

    Jurisdiction for this insurance coverage dispute is provided by 28 U.S.C. § 1332. Colony Insurance Company ("Colony") is a Virginia corporation with its principal place of business in Richmond, Virginia. Defendant Expert Group International d/b/a Expert Au Pair ("Expert Au Pair") is a Florida corporation with its principal place of business in St. Petersburg, Florida. Defendant Go Au Pair Operations LLC d/b/a American Cultural Exchange ("Go Au Pair") is a Utah limited liability company that is wholly owned by American Cultural Exchange, LLC. Defendant Au Pair International, Inc. ("Au Pair Int'l") is a Colorado corporation with its

principal place of business in Boulder, Colorado. The individual defendants included in the caption are named plaintiffs in the civil action entitled *Johana Paola Beltran, et al. v. Interexchange, Inc., et al.*, 14-cv-03074-CMA-CBS, in the United States District Court for the District of Colorado (the "underlying action" or "the *Beltran* action"). The court has determined that they are not necessary parties to this civil action between Colony and its insureds. *See* Order, May 5, 2016 (doc. 19).

Expert Au Pair, Go Au Pair, and Au Pair Int'l are au pair placement agencies. They assist foreign nationals seeking to work in the United States as au pairs and prospective host families looking for au pairs to find one another. Colony issued separate professional liability policies to Expert Au Pair, Go Au Pair, and Au Pair Int'l (collectively "the Insureds").

The Insureds are three of the named defendants in the *Beltran* action. The Insureds tendered the defense to Colony, and Colony agreed to defend the Insureds under a reservation of rights. The underlying action is ongoing, and Colony has been funding the Insureds' defense.

Colony filed this action on November 13, 2015, seeking a declaration that the subject policies provide no coverage for any of the claims asserted against the Insureds in the *Beltran* action. Colony also seeks reimbursement of the attorneys' fees and costs it has incurred in defending the Insureds.

On September 15, 2016, Colony moved pursuant to Fed. R. Civ. P. 56 for final summary judgment in its favor, arguing that the express terms of the policies demonstrate that Colony has no duty to defend and, consequently, no duty of indemnification.

The duty to defend and the duty to indemnify are distinct duties. Because an insurer's duty to defend is broader than the duty to indemnify, the initial question is whether Colony owes a duty of defense.

Colorado law applies with respect to the Au Pair Int'l policy. Utah law applies with respect to the Go Au Pair policy, and Florida law applies with respect to the Expert Au Pair policy. All three states follow the "four corners" (also known as the "eight corners") rule. Under that rule, the duty to defend is to be determined by comparing the complaint in the underlying action and the language of the subject policy. *Compass Ins. Co. v. City of Littleton*, 984 P.2d 606, 613 (Colo. 1999); *Cyprus Amax Minerals Co. v. Lexington Ins. Co.*, 74 P.3d 294, 299-300 (Colo. 2003); *Colony Ins. Co. v. Barnes*, 410 F. Supp. 2d 1137, 1139 (M.D. Fla. 2005); *Jones v. Florida Ins. Guar. Ass'n, Inc.*, 908 So. 2d 435, 443 (Fla. 2005); *Basic Research, LLC v. Admiral Ins. Co.*, 297 P.3d 578, 580 (Utah 2013).

An insurer's duty to defend arises when the underlying complaint against the insured alleges any facts that might fall within the coverage of the policy. *Hecla Mining Co. v. N.H. Ins. Co.*, 811 P.2d 1083, 1089 (Colo. 1991) (citation, footnote, brackets, and internal quotation marks omitted). "The actual liability of the insured to the claimant is not the criterion which places upon the insurance company the obligation to defend. Rather, the obligation to defend arises from allegations in the complaint, which if sustained, would impose a liability covered by the policy." *Id.*; *see also Constitution Assocs. v. N.H. Ins. Co.*, 930 P.2d 556, 563 (Colo. 1996).

The operative complaint in the *Beltran* action is the second amended complaint, filed October 18, 2016. Pl.'s Ex. A. That complaint (the "underlying complaint" or "*Beltran* complaint") alleges that the underlying plaintiffs are each individuals who obtained a J-1 visa

and came to the United States to work as an au pair for a host family.  As stated in the *Beltran* complaint, the J-1 visa au pair program is overseen and administered by the United States Department of State ("State Department") under the authority of the Mutual Educational and Cultural Exchange Act of 1961, as amended,[1] and "allows foreign nationals between the ages of 18 and 26, with secondary school educations and English proficiency, to work for 'host families' as child care workers for no more than 45 hours a week in exchange for room and board and a legal wage."  Underlying Compl. ¶¶ 46-47.[2]  Any foreign national seeking a position as an au pair in the United States must be sponsored by an organization designated by the State Department.  The underlying defendants ("Sponsors") are the exclusive entities so authorized to recruit and place au pairs with host families in the United States.  ¶ 49.

Federal regulations address the responsibilities of Sponsors.  ¶¶ 61-67; *see also* 22 C.F.R. §§ 62.10 & 62.31.  Those responsibilities include requiring that "au pair participants are compensated at a weekly rate based upon 45 hours of child care services per week and paid in conformance with the requirements of the Fair Labor Standards Act as interpreted and implemented by the United States Department of Labor."  22 C.F.R § 63.31(j)(1) (cited in ¶ 67).

The *Beltran* Plaintiffs allege that the Sponsors operate as a cartel and colluded to fix standard au pair wages at the programmatic wage floor announced by the State Department. They allege that the Sponsors effected that goal by wrongfully informing au pairs that au pair wages are set by law and cannot be increased, and by failing to advise au pairs that they could be

_____

[1] 22 U.S.C. § 2451 et seq.

[2] Unless otherwise stated, paragraph symbols (¶¶) refer to paragraphs of the underlying complaint.

paid more than the amounts identified by the Sponsors. The *Beltran* Plaintiffs claim that the Sponsors – by maintaining au pair wages at that artificially low rate – are able to increase the fees paid by host families to Sponsors, while maintaining the affordability of the au pair arrangements for potential host families, thereby enhancing the Sponsors' profits at the expense of the au pairs. ¶¶ 2, 5, 73, 80, 84, 87-89, 135, 143-44, 151, 170, 236, 239, 241, 255, 289, 312.

The *Beltran* complaint includes ten claims for relief against various sets of the Sponsor defendants. The first claim is for restraint of trade in violation of Section 1 of the Sherman Act, 15 U.S.C. § 1, and is alleged against all Sponsors. The second claim alleges violations of civil RICO, 18 U.S.C. § 1964(c), by six Sponsors. The remaining claims allege breach of fiduciary duty; negligent misrepresentation; constructive fraud or fraudulent concealment; violations of consumer protection laws; violations of the Fair Labor Standards Act, 29 U.S.C. § 201 ("FLSA"), and violations of various state wage-hour laws.

The only claim alleged against Au Pair Int'l is the antitrust claim. Go Au Pair and Expert Au Pair are named as defendants for the antitrust claim and the claims of negligent misrepresentation, breach of fiduciary duty, fraud, consumer protection violations, and certain of the wage and hour claims.

Colony argues that none of the Insureds can show that its policy's Professional Liability Insuring Agreement provides coverage for the *Beltran* action.

The professional liability policies that Colony issued to the Insureds were designed primarily for health care companies and health care professionals. In each policy, the title of the professional liability coverage part includes the following subtitle: " Long Term Care Facilities/Miscellaneous Health Care Facilities/Social Services." It is unclear from the record

why Colony issued coverage of that type to insureds whose business is au pair placement and who do not perform health care services.

The Professional Liability coverage part of each policy insures (subject to the policy's other terms, conditions, exclusions, or limitations) those sums the Insureds are legally obligated to pay as "damages" that arise out of a "wrongful act" that occurred in the conduct of the Insured's "professional services." *See* Pl.'s Ex. B (Go Au Pair Policy, Professional Liability Coverage Part, Section I, Insuring Agreement at p. 1 of 3); Pl.'s Ex. C (Au Pair Int'l Policy, Professional Liability Coverage Part, Section I, Insuring Agreement at p. 1 of 4); Pl.'s Ex. D (Au Pair Int'l Policy at Professional Liability Coverage Part, Section I, Insuring Agreement at p. 1 of 3).

In all three policies, the term "professional services" is defined to mean the providing of:

a. medical, surgical, dental, x-ray, mental health or nursing service or treatment, or the furnishing of food or beverage in connection with such service or treatment;

b. medications, medical supplies or medical appliances;

c. health or therapeutic service, treatment or advice;

d. counseling or social service;

e. postmortem handling of human bodies including organ or tissue recovery; and

f. services undertaken for your formal accreditation standards review or equivalent professional board or committee for any insured . . . .

*See* Pl.'s Ex. B (Go Au Pair Policy, Common Policy Provisions at p. 13 of 14); Pl.'s Ex. C (Au Pair Int'l Policy, Common Policy Provisions at p. 14 of 14); Pl.'s Ex. D (Expert Au Pair Policy, Common Policy Provisions at p. 13 of 14).

Of those listed professional services, the Insureds perform only "counseling." There is no dispute that the Insureds' au pair placement services involve providing information and advice to au pairs and host families about what to expect from the employment relationship between the host family and the au pair. State Department regulations obligate the Insureds to perform such services. Colony acknowledges that the Insureds' business activities involve providing advice (i.e., counseling services) to au pairs and host families.

Colony asserts that the *Beltran* complaint, when "stripped to its essence," claims that the Insureds cheated au pairs on wages. Colony argues that "cheating people does not qualify as the provision of a 'professional service.'" Pl.'s Mot. at p. 1. That is, Colony argues that coverage does not exist under the Professional Liability Insuring Agreement of each policy because the acts of conspiring to fix wages or failing to pay wages required by law are not "professional services."

Colony is correct that no coverage exists for the Sherman Act claim alleged by the *Beltran* Plaintiffs. That claim does not fall within the scope of the policies' professional liability insuring agreement because "counseling" does not include the alleged agreement to fix wages.

At oral argument, the court expressed the view that the Sherman Act claim should be excluded as an intentional wrongful act and coverage would be against public policy. After argument the defendants provided information that insurance companies do provide coverage for antitrust claims. The plaintiff prevails on this claim because the policies' definition of professional services does not encompass price fixing.

Because the Sherman Act claim is the only claim alleged by the *Beltran* Plaintiffs against Au Pair Int'l, Colony has no duty to provide a defense to that insured.[3]

With respect to Go Au Pair and Expert Au Pair, the determination of the duty to defend requires examination of other claims and not simply the gravamen of the *Beltran* complaint. The *Beltran* Plaintiffs seek compensatory damages from Go Au Pair and Expert Au Pair for, among other claims, negligent misrepresentation and breach of fiduciary duty, based on allegations that they gave erroneous advice and information to au pairs about the terms of their employment. In addition to the allegations of price fixing, the underlying complaint alleges other wrongful acts, including:

> •falsely informing au pairs that the $195.75 programmatic wage floor is a maximum wage or a wage fixed by the government (¶ 144);
>
> •improperly telling the au pairs a law existed that set the wage at $195.75 and by implication that this was legal when, in fact, Federal and State minimum wage laws could require higher minimum wages for 45 hours of work (¶¶ 236, 239);
>
> •failing to advise the au pairs that since the au pairs' contractual wage was only $4.35, the only way that wage could ever satisfy State and Federal minimum wages was if the wage were accompanied by legal wage credits for furnished facilities (¶ 241);
>
> •making misstatements about wages to induce au pairs to sign up at suppressed illegal wages without realizing that they could seek higher stipends from Sponsors or the families (¶ 255);
>
> •failing to exercise reasonable care when informing the au pairs the stipend could not be adjusted (¶ 256).

---

[3]In addition to professional liability coverage, the Au Pair Int'l policy includes a commercial general liability coverage (CGL) form. The Insureds' opposition brief does not address that coverage, thereby conceding that it does not apply to the claims alleged in the *Beltran* complaint.

Those allegations support the claims of breach of fiduciary duty and negligent misrepresentation against Go Au Pair and Expert Au Pair and fall within the coverage described in the professional liability insuring agreements of their policies.

Colony contends that coverage is avoided by the application of various policy exclusions. The burden is on the insurer to show the applicability of an exclusion. *Compass Ins. Co. v. City of Littleton*, 984 P.2d 606, 614 (Colo.1999); *Citizens Prop. Ins. Corp. v. Salkey*, 190 So. 3d 1092, 1094 (Fla. Dist. Ct. App. 2016), *reh'g denied* (Apr. 20, 2016).

Colony argues that coverage is excluded entirely by the exclusion for any claim "based upon or arising out of any act, omission or offense committed with knowledge of its wrongful nature or with the intent to cause damage."

Colony's argument fails because it interprets that exclusion too broadly. The phrase "arising out of" in the exclusion does not mean it encompasses claims predicated on negligent conduct. The claims of breach of fiduciary duty and negligent misrepresentation alleged against Go Au Pair and Expert Au Pair do not require proof of conscious wrongdoing or intent to injure. The "knowledge of wrongful nature exclusion" does not excuse Colony's duty of defense to Go Au Pair and Expert Au Pair.

Colony contends that the "personal profit" exclusion applies to avoid its duty of defense. That exclusion precludes coverage for any claim "[b]ased upon or arising out of . . . the gaining by any insured of any personal profit, gain or advantage to which the insured is not legally entitled."

Colony's argument about the personal profit exclusion is not persuasive. Such exclusionary language avoids coverage only for claims that require an illegal profit or gain as an

element of the claim. *See Alstrin v. St. Paul Mercury Ins. Co.*, 179 F. Supp. 2d 376, 400 (D. Del. 2002) ("[T]he personal profit exclusion] by its terms, requires a profit or gain that is illegal; not an illegal act that produces a profit or gain to the insured as a by-product."). Although the underlying complaint alleges that the Insureds benefitted financially from the alleged wrongful conduct, that is not the type of "personal profit, gain or advantage" that would be within the personal profit exclusion.

Colony argues that its duty to defend is excused by the exclusion for employment-related practices.

That exclusion does not avoid Colony's duty to defend Go Au Pair and Expert Au Pair because the *Beltran* Plaintiffs' claims of negligent misrepresentation and breach of fiduciary duty do not depend on proof of an employer-employee relationship between the Insureds and au pairs.

Colony argues that its duty to defend is excused by the exclusion for any claim based upon or arising out of the "rights or duties under any agreement including disputes over fees for services."

That argument fails because the *Beltran* complaint does not allege a fee dispute within the meaning of that exclusion. *See, e.g.*, *ACE Am. Ins. Co. v. Ascend One Corp.*, 2007 WL 1774495, at *4 (D. Md. 2007) ("The simplest understanding of a 'fee dispute' is a disagreement regarding the amount the consumer paid for services . . . ."). The *Beltran* Plaintiffs do not complain about any fees charged by the Insureds for their services.

Colony contends that its duty to defend is excused by the exclusion for "any claim based upon or arising out of any claim for payment of any fine, sanction or penalty of any nature

against the insured or the insured's client," and the endorsement which states that the policy does not apply to "any claim for or any awards of (1) punitive, exemplary or multiple damages; or (2) equitable non-pecuniary relief; including any fines, penalties, court imposed sanctions, return or restitution of legal fees, costs or other expenses associated with such awards. "

If, at the conclusion of the underlying action, the *Beltran* Plaintiffs obtain an award in their favor, those exclusions may significantly limit Colony's duty of indemnification. At this stage, those exclusions do not excuse Colony's duty to defend Go Au Pair and Expert Au Pair because the *Beltran* Plaintiffs seek compensatory damages for their claims, in addition to other types of relief.

Colony contends that coverage is barred by the fortuity doctrine, asserting that the *Beltran* complaint describes a long-standing scheme and any loss resulting from such a scheme could not be fortuitous.

The fortuity doctrine, a common law principle, provides that one may not obtain insurance for a loss that either has already taken place or is in progress. *See Pittston Co. Ultramar Am. Ltd. v. Allianz Ins. Co.,* 124 F.3d 508, 516 (3d Cir. 1997). The focus of the doctrine is the time when the insurance contract was formed. Colony's argument about the fortuity doctrine fails because the allegations of the complaint are not evidence of what the Insureds knew about potential liability when they purchased the policies. The present record contains no such evidence.

Because Colony is obligated to defend Go Au Pair and Expert Au Pair against the claims alleged in the underlying complaint, the determination of whether Colony is obligated to indemnify those insureds must await the conclusion of that action.

Because Colony owes no obligation of defense to Au Pair Int'l, Colony owes it no duty of indemnification. The Au Pair Int'l policy is governed by Colorado law, and the law of that State provides that when "there is no duty to defend, there is no duty to indemnify." *City of Arvada v. Colo. Intergovernmental Risk Sharing Agency*, 988 P.2d 184, 187 (Colo. 1999).

Colorado law also provides that when an insurer defends under a reservation of rights and there is an ultimate finding of no coverage, the insurer is entitled to seek reimbursement of its defense costs. *See Hecla Mining Co. v. N.H. Ins. Co.*, 811 P.2d 1083, 1089 (Colo. 1991); *Cotter Corp. v. Am. Empire Surplus Lines Ins. Co.*, 90 P.3d 814, 828 (Colo. 2004); *Valley Forge Ins. Co. v. Health Care Mgmt. Partners, Ltd.*, 616 F.3d 1086, 1093 (10th Cir. 2010). Colony is entitled to reimbursement of the amount it has expended defending Au Pair Int'l.

Based on the foregoing, it is

ORDERED that Plaintiff's motion for summary judgment [28] is denied as to defendant Expert Group International Inc. d/b/a Expert Au Pair; it is

FURTHER ORDERED that Plaintiff's motion for summary judgment [28] is denied as to defendant Go Au Pair Operations LLC d/b/a American Cultural Exchange, and it is

FURTHER ORDERED that Plaintiff's motion for summary judgment [28] is granted as to defendant Au Pair International, Inc. The court declares that Colony Insurance Company owes no duty of defense or indemnification to defendant Au Pair International, Inc. with respect to the claims alleged in the action entitled *Johana Paola Beltran, et al. v. Interexchange, Inc., et al.*, 14-cv-03074-CMA-CBS, in the United States District Court for the District of Colorado.

Final judgment will enter against Au Pair International after the conclusion of

proceedings to determine the amount of defense costs that Plaintiff is entitled to recover from Au Pair International, Inc. It is

FURTHER ORDERED that Plaintiff's motion [39] to strike Defendants' supplemental briefing is denied.

Dated: May 17, 2017

BY THE COURT:

s/Richard P. Matsch
_____
Richard P. Matsch, Senior Judge